UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KENNETH MICHAEL SZEFLER,

                       Plaintiff,

                                                                 **Hon. Hugh B. Scott**

                 v.                                                    **16CV252V**

                                                                 **Report**
                                                                  **and**
CAROLYN W. COLVIN, Acting                   **Recommendation**
Commissioner of Social Security[1],

                       Defendant.

      Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 8 (plaintiff), 12 (defendant Commissioner); see Docket No. 11, referral Order).

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

      The plaintiff ("Kenneth Szefler" or "plaintiff") filed an application for disability insurance benefits on January 15, 2013. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated December 11, 2014, that the plaintiff was not disabled

---

[1] On February 14, 2013, Carolyn W. Colvin became acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for the now former Commissioner Michael Astrue as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on February 2, 2016, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on March 28, 2016 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 8, 12). The motions were deemed submitted on November 28, 2016 (Docket No. 10).

## FACTUAL BACKGROUND[2]

Plaintiff was born on November 9, 1958, and has completed high school (R. 125, 40; Docket No. 8, Pl. Memo. at 4). Prior to his ailment, plaintiff worked construction and sales at a home improvement store (R. 146; Docket No. 8, Pl. Memo. at 4). His last past relevant work was as a building contractor, which the ALJ (relying upon the vocational expert's opinion) found plaintiff could not return to that work (R. 40). The ALJ deemed that plaintiff's date of last insured was December 31, 2010 (R. 35, 37), and his claimed period of disability was between August 5, 2009, and December 31, 2010 (R. 39).

Plaintiff's claimed impairments are bipolar disorder, depressive disorder and attention deficit hyperactive disorder ("ADHD") (R. 37). The ALJ applied the "paragraph B" criteria and found that plaintiff had only mild restrictions in activities of daily living; moderate difficulties in social functioning; mild difficulties in concentration, persistence, or pace, and one or two episodes of decompensation (R. 38) and also found plaintiff did not meet "paragraph B" or "paragraph C" criteria for a mental impairment listing (R. 37-38).

---

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 7.

Plaintiff testified at the ALJ hearing that he had difficulties with bipolar disorder, depression and ADHD (R. 53), experiencing mood swings on a daily or every other day basis (R. 54; Docket No. 8, Pl. Memo. at 4). When depressed, plaintiff felt very confused and upset, sleeping a lot (R. 54; Docket No. 8, Pl. Memo. at 4). When manic, plaintiff did not want to sleep and spent a lot of money (R. 54; Docket No. 8, Pl. Memo. at 5). He stated that he took Zoloft, Seroquel, Lamictal, Abilify, and Adderall (R. 55; Docket No. 8, Pl. Memo. at 5). He had difficulty remembering what he read, he could not stay focused, and had trouble finishing what he started (R. 56; Docket No. 8, Pl. Memo. at 5).

Plaintiff testified that, before December 2010, he rarely cleaned, did not cook or do the dishes, and did not do the laundry, and rarely made beds, vacuumed or mopped, he rarely did yard work (R. 62; Docket No. 8, Pl. Memo. at 5), although he did take out the trash (R. 62; Docket No. 8, Pl. Memo. at 5). Plaintiff complained of having sleep difficulties, varying whether he was in a manic or depressive phase (R. 64; Docket No. 8, Pl. Memo. at 5).

## MEDICAL AND VOCATIONAL EVIDENCE

Dr. Balvinder Kang reported in a letter dated August 5, 2013, that plaintiff could not hold any meaningful employment due to lack of concentration and forgetfulness and thus Dr. Kang opined that plaintiff was permanently disabled (R. 412, 40). There, Dr. Kang declared that plaintiff had been under his care since 2008 (R. 412) and previously was treated by Dr. Richard Wolin for bipolar disorder, mixed type and attention deficit disorder (R. 412, 251). Dr. Kang noted that plaintiff had not been able to hold meaningful work for the last four years due to plaintiff's lack of concentration, forgetfulness, depression, and hypomania (R. 412), reporting that plaintiff went through episodes of mania, hypomania severe depression that has impacted

plaintiff's level of functioning and has taken multiple combinations of medications (R. 412). In November 2015, Dr. Kang supplied a Mental Residual Functional Capacity Questionnaire that was submitted to the Appeals Council (R. 9). There, Dr. Kang noted that he had seen plaintiff as a patient every 2-3 months for 15-30 months and prescribed Seroquel, Lamictal, Zoloft, Trazadone, and Adderal for mood swings, depression, and anxiety (R. 9). Dr. Kang also stated that plaintiff lacked motivation (R. 9) with a guarded prognosis (R. 9). He concluded that plaintiff's symptoms and his resulting functional limitations would increase if he had to work a full-time position (R. 13), even worsening from prior reported symptoms and findings from treatment notes (R. 14). Dr. Kang found that plaintiff's condition would have him absent more than four days per month from any work (R. 13) and that he would be off task more than 30% of the time (R. 12).

*During Disability Period, August 2009 to December 2010*

During the period relevant to plaintiff's claim (August 5, 2009, to December 31, 2010), Dr. Wolin had prescribed Zoloft and Lamictal for plaintiff in 2007 for his bipolar disorder (R. 251, 288). Seeing Dr. Steven Herman on November 25, 2009, for other ailments, plaintiff's medical history noted to be significant for anxiety, bipolar depression, and ADHD (R. 211, repeated R. 333; Docket No. 8, Pl. Memo. at 7-8). Medications listed included Adderall, Sertraline (or Zoloft), Lamictal, and Alprazolam (R. 211, 333; Docket No. 8, Pl. Memo. at 8), with the Alprazolam listed as taken as needed for flying (R. 211, 333), although plaintiff stated that he had not taken Alprazolam (R. 211, 333). Dr. Herman noted that plaintiff's affect and mood were within normal levels (R. 211, 333; Docket No. 12, Def. Memo. at 7).

Plaintiff saw Dr. Kang on July 8, 2010, for an annual update of his psychiatric health and he reported still taking Zoloft, Lamictal, and Adderall, and reporting that he had been feeling "really good" at that time (R. 282; Docket No. 8, Pl. Memo. at 8; Docket No. 12, Def. Memo. at 7). He denied feeling depressed or suicidal, but complained of interrupted sleep (R. 282). He claimed also that he did not have any unusual stress at that time (R. 282). He was hospitalized on December 16, 2010, for chest pain, plaintiff's chart noted that he had a history of depression and was receiving Zoloft and Wellbutrin (R. 201-02, 242; Docket No. 8, Pl. Memo. at 8; Docket No. 12, Def. Memo. at 7). The hospital's assessment and plan included continuation of Zoloft and Wellbutrin (R. 207, 243). Defendant notes that no depressive symptoms were discussed and plaintiff was observed to be alert and oriented, with normal neurological findings (R. 206-07, 242; Docket No. 12, Def. Memo. at 7). Upon discharge for his chest pains, plaintiff was instructed to return to his normal activities as tolerated (R. 243; see Docket No. 12, Def. Memo. at 8).

*ALJ's Decision*

Limiting facts to the period of disability (August 5, 2009, to December 31, 2010), the ALJ gave very little weight to Dr. Kang's August 5, 2013, opinion because the ALJ did not find any evidence that Dr. Kang had treated plaintiff before the date of last insured (December 31, 2010) (R. 40).

The ALJ found that plaintiff had a residual functional capacity that he was able to perform all exertional activities consistent with a broad world of work. Plaintiff can climb ropes, ladders or scaffolding, he can work in areas with unprotected heights, or work around heavy, moving or dangerous machinery. He has occasional limitations in the ability to work in coordination with and in proximity to others without being distracted by them. He also has occasional limitations in

his ability to respond appropriately to changes in work setting. Finally, the ALJ found that plaintiff had occasional limitations in dealing with stress. (R. 38.) The ALJ noted plaintiff's testimony and found it to be credible but not to the extent plaintiff alleges his condition and complaints (R. 40).

The ALJ asked the vocational expert about a hypothetical claimant with similar conditions as the residual functional capacity as found for plaintiff. The expert opined that a hypothetical claimant could perform as a janitor (heavy, unskilled work), a hand packager (medium, unskilled work), or a housekeeper (light, unskilled work) (R. 41; see Docket No. 12, Def. Memo. at 14; R. 72). The ALJ concluded that plaintiff was not disabled.

*Appeals Council's Affirmance*

On appeal, the Appeals Council (R. 2) found that Dr. Kang's retrospective opinion of November 16, 2015 (R. 9-14; cf. Docket No. 12, Def. Memo. at 22), did not provide a basis for disturbing the ALJ's decision, stating that the new information from Dr. Kang was from a later time than the disability period (R. 2). The Appeals Council upheld the ALJ's disability finding.

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

    (1) whether the plaintiff is currently working;

    (2) whether the plaintiff suffers from a severe impairment;

    (3) whether the impairment is listed in Appendix 1 of the relevant regulations;

>  (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
>  (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that the Appeals Council failed to provide good reason why treating source Dr. Balvinder Kang's statement was rejected (Docket No. 8, Pl. Memo. at

13-18; R. 9-14).   Next, he contends that the ALJ failed to develop the record adequately by not obtaining a complete medical history from Dr. Kang (Docket No. 8, Pl. Memo. at 18-20).   Third, plaintiff argues that the ALJ neglected to rely upon any medical opinion in fashioning the residual functional capacity finding (id. at 20-22).

Defendant responds that substantial evidence supports the residual functional capacity (Docket No. 12, Def. Memo. at 16-21), and the ALJ properly weighed Dr. Kang's findings (id. at 18-21).   Defendant Commissioner argues that the Appeals Council properly denied plaintiff's review of the ALJ decision because plaintiff submitted a retrospective opinion of Dr. Kang issued years after the relevant disability period (id. at 21-23; R. 1-3, 2).

Plaintiff replies that defendant raises a new argument (not stated by the ALJ) that Dr. Kang's November 2015 report was not material in that it was not supported by the medical record (Docket No. 13, Pl. Reply Memo. at 1; cf. Docket No. 12, Def. Memo. at 22-23).   Plaintiff contends that the ALJ affirmatively disputed the existence of evidence, here whether Dr. Kang treated plaintiff from 2009-10, and was not a failure of the ALJ to cite to evidence as defendant now argues (Docket No. 13, Pl. Reply Memo. at 2).

I.   Appeals Council and ALJ Development of the Record

The Appeals Council "looked at medical records from" Dr. Kang dated November 16, 2015 (R. 2, 9).   Reasoning that the ALJ only considered plaintiff's eligibility through December 31, 2010, the date plaintiff was last insured, the Appeals Council held that "[t]his new information is about a later time.   Therefore it does not affect the decision about whether you were disabled at the time you were last insured for disability."   (R. 2.)

This Court focused on plaintiff's treatment by Dr. Kang during the relevant disability period (form August 5, 2009, to December 31, 2010) and plaintiff established elsewhere in the record that Dr. Kang had treated him since his former doctor, Dr. Richard Wolin, retired in 2008 (R. 283, 412, 427), including during this relevant disability period (R. 282; Docket No. 8, Pl. Memo. at 20). This treatment includes prior requests by Dr. Kang to have Dr. Herman (who plaintiff also saw as his primary physician) prescribe refills for Zoloft and Lamictal for his mental condition (Docket No. 8, Pl. Memo. at 19-20; R. 283, 224, 223, 219; Docket No. 8, Pl. Memo. at 19). The ALJ erred in not giving Dr. Kang's opinion sufficient weight and the Appeals Council compounded this error by not considering the longitudinal retrospective as new information in considering plaintiff's appeal. The ALJ also found that Dr. Kang began treating plaintiff in 2012 (R. 40), by citing to Dr. Kang's treatment notes for that year (R. 389-91), a year after Dr. Kang actually began treatment. The ALJ has not reviewed prior years' treatment records by Dr. Kang or apparently attempted to obtain them. The ALJ also noted that Dr. Kang did not furnish a "MRFC" (R. 40), a Mental Residual Functional Capacity assessment form, Form SSA-4734-F4, to the ALJ, although Dr. Kang later supplied (in November 2015) a Mental Residual Function Capacity Questionnaire (R. 9) to the Appeals Council. Under Social Security regulations, SSR 96-8p, this form "is merely a guideline to assist a physician in deciding the presence and degree of a claimant's functional limitations; most importantly, this form does not constitute a RFC determination," Latham v. Colvin, No. 15CV131, 2016 WL 6067848, at *5 (W.D.N.Y. Oct. 17, 2016) (Skretny, J.). This form is usually completed by the agency's medical or psychological consultants to summarize the medical record and their examination findings whether a claimant fits within the definitions for a disability. If completed by a treating source (as opposed to the

agency consultant), it is part of the medical record that the ALJ was obliged to fully develop, see Villanueva v. Barnhart, No. 03 Civ. 9021, 2005 WL 22846, at *11 (S.D.N.Y. Jan. 3, 2005). By noting this omission to the record before him, the ALJ shows that the record from Dr. Kang the ALJ reviewed was incomplete and it was the ALJ's obligation to obtain a complete record, either from the claimant's psychiatric record or from the summary contained in the mental residual functional capacity assessment. This case should be remanded for the ALJ to obtain a questionnaire from Dr. Kang as to plaintiff's mental residual functional capacity specifically during the disability period.

II.     Residual Functional Capacity and Medical Opinion Supporting It

Although the ALJ fails to cite medical opinion in support of his residual functional capacity findings, the record contains some references to plaintiff taking Zoloft and Lamictal during the relevant period for his bipolar disorder and ADHD. But this record, as noted above, is incomplete due to omissions (noted above) from the records of Dr. Kang, plaintiff's treating psychiatrist during that period.

This matter should be remanded for further development of plaintiff's psychiatric record.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 12) should be **DENIED** and plaintiff's motion for similar relief in his favor (Docket No. 8) should be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                  *s/Hugh B. Scott*
                                                  Hon. Hugh B. Scott
                                           United States Magistrate Judge

Buffalo, New York
January 13, 2017